**Everline LEWIS and Margaret Truss, Appellants,**

v.

**The HOUSING AUTHORITY OF the CITY OF TALLADEGA, ALABAMA, et al., Appellees.**

**No. 25172.**

United States Court of Appeals
Fifth Circuit.

June 26, 1968.

Orzell Billingsley, Jr., Peter A. Hall, Birmingham, Ala., Charles H. Jones, Jr., New York City, Gabrielle A. Kirk, Jack Greenberg, Charles Stephen Ralston, New York City, for appellants.

Byron D. Boyett, Talladega, Ala., Reid B. Barnes, Birmingham, Ala., for appellees.

Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District Judge.

AINSWORTH, Circuit Judge:

Appellants, who are Negro tenants of Knoxville Homes, a public housing project of the City of Talladega, Alabama, brought this class action, as plaintiffs, under Rule 23(b) (2) of the Federal Rules of Civil Procedure against the Housing Authority of the City of Talladega, Alabama, and its Executive Director, for declaratory and injunctive relief, to redress the alleged deprivation of constitutional rights under the due process and equal protection clauses, and their rights under the United States Housing Act (42 U.S.C. § 1401 et seq.) and the Civil Rights Act of 1964, Section 601 (42 U.S.C. § 2000d).

According to the allegations of their complaint, appellants sought an injunction enjoining defendants from:

A. Continuing to enforce its policy of automatically evicting any family living in any one of its public housing projects if a member of that family has or is expecting an illegitimate child;

B. Continuing to evict or threatening to evict tenants living in any one of its public housing projects without indicating the reasons for the eviction and without giving them a

fair hearing on the alleged charges for the eviction;

C. Instituting any proceedings to evict or further threatening to evict plaintiffs and the classes they represent;

D. Continuing to segregate the said public housing projects on the basis of race or color;

E. Failing to comply with federal regulations relating to the operation of public housing projects constructed with the aid of federal funds; in particular, those regulations that require that notices be posted stating that all projects are open to all applicants regardless of race or color.

They allege that the practices complained of also entitled them to a declaratory judgment.

Plaintiffs received letters dated January 23, 1967 from the Housing Authority, notifying them to move and vacate the *premises in 10 days. Subsequently they* were notified to vacate by February 10, 1967. Though no reason was stated in the letters to the tenants to vacate, the ostensible reason why plaintiff Everline Lewis was being required to vacate was that her daughter was expecting an illegitimate child although the daughter did not live with the tenant. Plaintiff Margaret Truss was being required to vacate for the reason that she was expecting an illegitimate child.

Defendant adopted a rule on February 21, 1964, effective December 1, 1964, that any illegitimate child born to any member of a tenant family would automatically bring eviction of that family, and if it became apparent that a person is expecting an illegitimate child, the family would be evicted immediately.[1]

On February 10, 1967, the present complaint was filed and the District Judge granted a temporary restraining order stopping the threatened eviction. Thereafter, the Housing Authority filed a motion to dismiss and a supplemental motion to dismiss to which was attached a copy of the revocation of the eviction notices. The Authority then contended that cancellation and revocation of the notices to vacate rendered the case moot and plaintiffs' action should be dismissed. The District Judge granted the motion to dismiss, and on plaintiffs' motion to vacate and set aside the order, the District Judge again held that the suit should be dismissed but without prejudice. The District Judge stated in his order that it appeared "there is no present threat to evict either of the plaintiffs or any other party for violation of the rule referred to." The Court noted plaintiffs' insistence upon a hearing to test the constitutionality of the rule, but stated it did not feel it should meet this issue under the undisputed facts. The Court stated it would permit a reopening of the case "without the necessity of the institution of a new suit at any time that the rights of the plaintiffs might be impaired by any wrongful or unconstitutional acts on the part of the defendants" and that "The plaintiffs will be permitted on proper notice and upon good cause shown to reinstate this action." The effect of the Court's order was to reaffirm its dis-

---

1. The rule in full is as follows:

"EFFECTIVE DECEMBER 1, 1964, ANY ILLEGITIMATE CHILD BORN TO ANY MEMBER OF A TENANT FAMILY WILL AUTOMATICALLY BRING ABOUT THE EVICTION OF THAT FAMILY.
"AFTER DECEMBER 1, 1964, IF IT BECOMES APPARENT THAT A PERSON IS EXPECTING AN ILLEGITIMATE CHILD, THE FAMILY WILL BE EVICTED IMMEDIATELY.

"THE PURPOSE OF THIS LETTER IS TO MAKE THE POLICY OF THE HOUSING AUTHORITY COMPLETELY CLEAR TO THE TENANT.
"NO EXCEPTIONS WILL BE MADE.
 William J. Munroe
 Executive Director
  Housing Authority of the
  City of Talladega, Alabama
"February 21, 1964."

missal of the suit (without prejudice) on the ground of mootness.

On February 7, 1967, subsequent to the mailing of the original notices to vacate, the Department of Housing and Urban Development issued a directive to local authorities requiring that no tenant in a federally assisted housing project be given notice to vacate without being told by the local authority, in a private conference or other appropriate manner, the reasons for the eviction, and be given an opportunity to make such reply or explanation as he may wish. The circular is noted in the Supreme Court's decision in Thorpe v. Housing Authority of City of Durham, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967). In his order finally dismissing the plaintiffs' suit the District Judge said, "The counsel for the Housing Authority has stated in open court that the Authority is complying with the circular of the Department of Housing and Urban Development which was involved in the decision of Thorpe v. Housing Authority of the City of Durham * * * and that the aforesaid rule will further in all respects be subordinated to the circular referred to."

Appellants complain that their suit was dismissed with many of the important allegations of their complaint untried and unheard. As to the withdrawal of the threatened eviction, appellants contend that the rule of the Housing Authority which entitles it to evict persons to whom illegitimate children are born, or in whose family an illegitimate child is born, still exists, has not been rescinded, and subjects them to the ever-present threat of eviction.

Following oral argument in this case, appellee Housing Authority submitted a supplemental memorandum in which the Court was informed that on May 29, 1968, two days after the argument, the Housing Authority by formal action rescinded the rule of February 21, 1964, effective December 1, 1964, relating to eviction for illegitimacy in the family. At the same time the Housing Authority adopted a new resolution which contained a "ground for eligibility for admission or continued occupancy in any Authority project." The full text of the resolution of the Housing Authority adopted on May 29, 1968, and now submitted to this Court, is set out in the margin of this opinion.[2]

---

**2.** The resolution reads as follows:

"Upon consideration of the existing policy and rule of the Housing Authority relative to the eviction of a tenant family if a member of the tenant family has, or is expecting, an illegitimate child, dated February 21, 1964, and made effective December 1, 1964, on motion duly made and seconded, and unanimously adopted, the said illegitimacy rule heretofore in force and effect is revoked, rescinded and declared null and void.

"The following resolution relating to desirability as a ground for eligibility for admission or continued occupancy in any Authority project was introduced by Curtis C. Gauntt, duly seconded by J. C. Munroe, and unanimously passed and adopted:

"BE' IT RESOLVED, that in order to insure the health, safety, morals and comfort of Public Housing tenants, to protect the property of the Housing Authority and to facilitate the proper administration by the Authority of its projects, the following ground is hereby adopted as a ground for eligibility

for admission or continued occupancy:

"'Ground for Eligibility. It shall be a ground for eligibility for admission or continued occupancy in any Authority project, that the tenant or applicant is or will be a desirable tenant. The standard to be used in approving eligibility for admission or continued occupancy of a family shall be that the family will not or does not constitute (1) a detriment to the health, safety or morals of its neighbors or the community, (2) an adverse influence upon sound family and community life, (3) a source of danger to the peaceful occupation of the other tenants, (4) a source of danger or cause of damage to the premises or property of the Authority, or (5) a nuisance. In making such determination consideration shall be given to the family, parental control over children, family stability, medical and other past history, reputation, conduct and behavior, criminal record, if any, occupation of wage earners, and any other data or information with respect to the family that has a bearing upon its desirability, includ-

Appellee then reiterated its contention that the case is now undoubtedly moot in view of the rescission of the Housing Authority rule relative to illegitimacy in the family. We directed a response by appellants because of the change of circumstances presented by the rescinding of the Housing Authority rule. Appellants now assert the unconstitutionality of the substitute rule of the Housing Authority adopted on May 29, 1968. They contend that the five standards for eligibility for admission to any Authority project are so vague that they are equivalent to no standards whatsoever. They refer, for example, to the undefined term "desirable tenant" in the new rule in connection with admission or continued occupancy by a tenant; to what they aver is a failure to prescribe standards in the use of such criteria relative to the admission or continued occupancy of a tenant family as to whether it constitutes "a detriment to the health, safety or morals of its neighbors or the community"; also, to mention of occupancy which has "an adverse influence upon sound family and community life." They contend that regulations of this type lack precision and are unconstitutional under the authority of Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964). It is obvious that the issues raised by the post-argument action of the Housing Authority in rescinding an old rule and adopting a new one relative to ground for eligibility for admission or continued occupancy in any Authority project, must be passed on initially by the Trial Court. Though the present threat of eviction to appellants has been lifted, there remain allegations in their complaint which are entitled to be heard. Appellants' charge of unconstitutionality of the new eligibility rule must also be passed on after the parties have had an opportunity to amend their pleadings to conform to changed circumstances. The case is not moot because there remains subject matter on which the judgment of the Court can and must operate. Singleton v. Board of Commissioners of State Institutions, 5 Cir., 1966, 356 F.2d 771, 773. Cf. Bailey v. Patterson, 5 Cir., 1963, 323 F.2d 201, cert. denied, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964); Pullum v. Greene, 5 Cir., 1968, 396 F.2d 251.

Reversed and remanded.

ing its conduct or behavior while residing in a project. Any applicant or tenant determined to be ineligible by virtue of the standard herein set forth shall be declared to be ineligible on the ground of Non-Desirability.'

"BE IT FURTHER RESOLVED that the aforesaid ground for eligibility shall be effective as of July 1, 1968, and due notice of the same and the effective date thereof be given to the tenants of the Authority's projects."