425 F.2d 853
 Pedro ESCALERA and Rose Escalera, on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellants,
v.
NEW YORK CITY HOUSING AUTHORITY, Ira S. Robbins, individually and as a Member of the New York City Housing Authority, Simeon Golar, individually and as a Member of the New York City Housing Authority, and Albert A. Walsh, individually and as a Member and Chairman of the New York City Housing Authority, Defendants-Appellees.
Rose Lee ROLLE, on behalf of herself and all other persons similarly situated, Plaintiff-Appellant,
v.
NEW YORK CITY HOUSING AUTHORITY, Ira S. Robbins, individually and as a Member of the New York City Housing Authority, Simeon Golar, individually and as a Member of the New York City Housing Authority, and Albert A. Walsh, individually and as a Member and Chairman of the New York City Housing Authority, Defendants-Appellees.
Walter LOCKMAN and Viola Lockman, on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellants,
v.
NEW YORK CITY HOUSING AUTHORITY and William Walsh, Ira S. Robbins and Simeon Golar, individually and in their capacities as a member of the New York City Housing Authority, Defendants-Appellees.
Clarence HUMPHREY, Phyllis Humphrey, and Fannie Haywood, on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellants,
v.
NEW YORK CITY HOUSING AUTHORITY, Ira S. Robbins, individually and in his capacity as a member of the New York City Housing Authority, and Francis V. Madigan, individually and in his capacity as a member of the New York City Housing Authority, Defendants-Appellees.
 Nos. 441-444.
 Dockets 33226-33229.
 United States Court of Appeals, Second Circuit.
 Argued January 14, 1970.
 Decided April 29, 1970.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Nancy E. LeBlanc, New York City (MFY Legal Services, Inc., New York City, Harold J. Rothwax and Michael B. Rosen, New York City, of counsel), for plaintiffs-appellants Escalera and Rolle.
 Henry A. Freedman, New York City, Center on Social Welfare Policy & Law, New York City, Lee A. Albert and Harold Edgar, New York City, Richard Kwasnik and Harold Washington, Bronx, N. Y. (Morrisania Legal Services, Bronx, N. Y., of counsel), for plaintiffs-appellants Lockman and Humphrey.
 Harold Weintraub, New York City, (Harold Levy and Jeanne Dorfman, New York City, of counsel), for defendants-appellees.
 Before MEDINA, WATERMAN and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge.
 
 
 1
 Appellants are tenants in New York City public housing projects. They brought four suits in the United States District Court for the Southern District of New York against the New York City Housing Authority [hereinafter cited as "HA"] and certain individuals as officers of the HA, in the form of class actions on behalf of themselves and all tenants similarly situated. The complaints invoked jurisdiction under the Civil Rights Act, 28 U.S.C. § 1343(3) (1962), and alleged the deprivation of appellants' right to due process secured by the Fourteenth Amendment to the Constitution and of their rights under the United States Housing Act of 1937, 42 U.S.C. § 1401 et seq. (1962). They sought injunctive and declaratory relief against certain alleged practices of the HA, 28 U.S.C. §§ 2201, 2202 (1962), 42 U.S.C. § 1983 (1970), and in two instances (Haywood and Lockman) a money judgment for additional rents which had been paid.
 
 
 2
 Appellants sought a preliminary injunction by filing an order to show cause. Defendant then moved pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the actions for, inter alia, failure to state a claim upon which relief could be granted, lack of jurisdiction, lack of substantial federal question, and failure to exhaust administrative remedies, and because the federal courts should abstain from considering these actions pending a determination by New York state courts in the first instance
 
 
 3
 After the parties submitted affidavits, argument on the motions was heard before District Judge Sylvester J. Ryan. Thereafter by an opinion of October 31, 1968 (67 Civ. 4236, 4306, 4307, 4414 S. D.N.Y.), and judgment of the next day, Judge Ryan granted defendants' motion, and dismissed the actions on the merits. We find error in the dismissal of these actions and remand to the district court to consider appellants' application for preliminary relief and to hold a trial on the merits.
 
 
 4
 The instant class actions challenge the constitutionality of the procedures used by the HA in three different types of actions: (1) termination of tenancy on the ground of non-desirability; (2) termination of tenancy for violation of HA rules and regulations; and (3) assessment of "additional rent" charges under the HA lease for undesirable acts by tenants. The HA, a corporate governmental agency financed by federal, state and city funds, administers the largest public housing program in the country, housing more than 144,000 families.
 
 I.
 
 5
 Since the complaints were dismissed at the pleadings stage on motions to dismiss, we must accept the allegations in appellants' complaints and supporting affidavits as true. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims. Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968); Barnes v. Merritt, 376 F.2d 8 (5 Cir. 1967); York v. Story, 324 F.2d 450, 453 (9 Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964); 2A Moore, Federal Practice ¶ 12.08, at 2271-74 (1968). Considered in this light, the challenge to the procedures of the HA is as follows.
 
 
 6
 A. Termination for Non-desirability.
 
 
 7
 Tenants in HA projects are required to sign month-to-month automatically renewable leases which can be terminated at the end of any month by either party upon the giving of one month's notice. Leases are terminated by the giving of one month's notice if the tenant is found to be non-desirable.[1]
 
 
 8
 If a tenant's undesirable acts persist to the point where the project manager decides he should recommend the termination of the tenancy on the ground of non-desirability, the manager has a meeting with the tenant at which he informs the tenant of his proposed recommendation, reviews with the tenant the information in the tenant's folder (which contains the entire history of the tenancy), and discusses the undesirable activity in question. The tenant is given a chance to explain his activity.
 
 
 9
 If after the meeting the project manager still wishes to recommend termination for non-desirability, the tenant is notified that he may submit a written statement to be sent with the project manager's recommendation and the tenant's folder to the HA Tenant Review Board [hereinafter cited "TRB"].
 
 
 10
 The TRB consists of eight officers of the HA. They consider the tenant's folder and the project manager's recommendation, and if they make a preliminary determination of the tenant's non-desirability, they inform the tenant in writing that they are "considering a recommendation" of termination, that he may appear before the TRB to tell his side of the case if he requests an appearance in 10 days, and that if he so requests an appearance he will be informed of the nature of the conduct under consideration. If the tenant fails to request an appearance within 10 days, the preliminary determination of non-desirability is made final by the TRB Chairman.
 
 
 11
 If the tenant makes a timely request for an appearance, he is sent a form letter telling him the time and place of the scheduled hearing, the general definition of a non-desirable tenant (as set out in footnote 1, supra), a short, often one-sentence, statement of the nature of the particular non-desirable conduct under consideration,[2] and the fact that he may bring any person to help represent him at the hearing.
 
 
 12
 A panel of two or more, usually three, of the TRB members is present at the hearing. The HA ordinarily presents no witnesses, but rather has a panel member read a summary of the entries in the tenant's folder. The tenant or his representative is permitted to comment about the entries or question witnesses in that regard. The tenant is generally not permitted to see the contents of the folder, the names of those who complained of his non-desirable activity, or the summary of the entries.[3] The rules and regulations governing the TRB and its panels in non-desirability cases, set out in the TRB "Handbook" are not made available to the tenant, even upon request. No transcript of the hearing is maintained.
 
 
 13
 Despite the summary notification to the tenant prior to hearing of the conduct under consideration, the panel decides whether the tenant is non-desirable on the basis of the tenant's entire folder;[4] thus the decision may be based in whole or in part on entries in the folder although the tenant received no notification prior to the hearing that the TRB was considering these entries, or indeed the decision may rest in some part on items in the folder about which the tenant is not notified even at the hearing.
 
 
 14
 If the panel decides that the tenant is non-desirable, the Chairman of the TRB notifies the tenant that the panel has determined that the tenant is ineligible. No findings or reasons grounding the panel's determination are released. Thereafter the HA gives the tenant the required one month's notice under lease to terminate the tenancy, and notifies the tenant that he should vacate. If the tenant does not vacate, a holdover proceeding is commenced in the New York City Civil Court. The only issue in such a proceeding is the validity of the notice to terminate under the lease, and the determination of non-desirability cannot be put in question. See New York City Housing Authority v. Gantt, 57 Misc.2d 447, 292 N.Y.S.2d 759 (Civ.Ct. N.Y.C. 1967); New York City Housing Authority v. Russ, 1 Misc.2d 170, 134 N.Y.S.2d 812 (App.T.1954); cf. Housing Authority of City of Durham v. Thorpe, 267 N. C. 431, 148 S.E.2d 290 (1966), judgment vacated on other grounds, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967). Levy & Weintraub, Termination of Public Housing Tenancies, N.Y.L.J. Dec. 11, 1968, p. 4, cols. 1-4.
 
 
 15
 The facts as to the instant plaintiffs may be quickly summarized. Proceedings were begun against the Rolles because of the alleged anti-social acts (such as statutory rape) of their son Fred, and against the Humphreys because Mr. Humphrey had been arrested on a narcotics charge several miles from the project. Both requested hearings. Counsel for Rolle demanded a variety of procedural safeguards sought in the present action, such as advance notice of the complete charge, a transcript of the hearing, confrontation and cross-examination of witnesses, an impartial hearing examiner, etc. Although the panel permitted Rolle's counsel to inspect the folder, it did not grant the other requests and Rolle refused to go forward with the hearing. Any further action by the HA with respect to Rolle was voluntarily postponed pending the outcome of this litigation. The Humphreys went through with the hearing although they were not permitted to inspect the folder, and were found to be non-desirable, and were given notice of termination and to vacate. No holdover action was brought due to the intervention of this action.
 
 
 16
 As to the procedures for termination on the ground of non-desirability, the appellants seek the following relief: (1) an injunction against evictions on this ground unless the following safeguards are afforded in connection with the hearing: (a) written notice prior to the hearing of all the grounds to be relied on in the decision; (b) notice of the rules and regulations governing the TRB panel at the hearing; (c) inspection of the tenant folder; (d) exclusion of items about which advance notice was not given; (e) confrontation and cross-examination of witnesses; (f) exclusion of hearsay items; (g) right to compel attendance of witnesses; (h) the keeping of a written record of the hearing; (i) impartial hearing examiner; (j) written decision with findings of facts and reasons; and (k) access to prior decisions as precedent; (2) an injunction against using a lease which permits the HA to evict simply by giving one month's notice and thus which permits the HA to evict without the above safeguards; (3) an injunction against the failure of the HA to negotiate new leases which provide safeguards which are constitutionally required; (4) a declaratory judgment that the present procedures are constitutionally deficient; and (5) an injunction against the termination of tenancies on grounds not set out in the lease or otherwise made known and which are too vague.
 
 
 17
 B. Termination for Breach of Rules and Regulations.
 
 
 18
 Tenants are required to sign the "Tenant Rules and Regulations" upon the execution of their lease agreements. This document is specifically referred to by the lease.
 
 
 19
 Violation of the rules and regulations is considered to be ground for termination of tenancy. The procedure for termination on this ground is quite simple. If the project manager feels that a tenant is ineligible for continued tenancy by virtue of a violation of the rules and regulations, he holds a meeting with the tenant at which the manager informs the tenant of the alleged violation and the possibility of termination. The tenant may tell his side of the story.
 
 
 20
 After the meeting, the project manager may decide the tenant is ineligible because of the violation, in which event he forwards the tenant's folder and a recommendation to terminate to the HA Central Office. The folder contains the manager's report on his meeting with the tenant and the tenant's responses. If the Central Office approves of the manager's determination, a notice to vacate after one month is sent to the tenant. If the tenant refuses to vacate, a holdover proceeding may be instituted as in the non-desirability cases.
 
 
 21
 The facts in regard to the instant plaintiffs, Mr. and Mrs. Escalera, are simple. For several years the Escaleras had a dog in violation of HA rules. They had been assessed "additional rent" (infra) for having the dog. In July, 1967, the project manager asked them about the dog, warning them that keeping the dog violated HA rules. Mr. Escalera informed the manager that the dog had been sold; the manager demanded written proof which was never provided. On September 29, 1967 the Escaleras received notice from the HA to vacate by October 31, 1967. Holdover proceedings were postponed due to the institution of the present suit.
 
 
 22
 As to the procedures for termination on the ground of violation of the HA rules and regulations, the appellants seek the following relief: (1) a preliminary injunction against the eviction of the Escaleras; (2) an injunction against evictions for rules violations if the tenant has not been afforded an opportunity to contest the reasons for termination; (3) an injunction against lease provisions which permit termination upon the giving of notice without giving reasons or a fair hearing to contest the reasons; (4) an injunction against failure by the HA to negotiate new leases providing at least minimum safeguards; and (5) a declaratory judgment that the present procedures are constitutionally deficient.
 
 
 23
 C. "Additional Rent" Charges or Fines.
 
 
 24
 The HA lease agreements by reference to the Tenant Rules and Regulations (which must be signed by tenants along with their leases) permit the HA to charge "additional rent" which must be paid, subject to landlord remedies for nonpayment of rent, in three types of circumstances: (1) for repair of damage to the premises; (2) for additional services provided for a tenant; and (3) for "liquidated damages" caused by a tenant or his family in violating the rules and requirements established by the HA for protection of its property and other tenants.
 
 
 25
 The amount of the "additional rent" is within the project manager's discretion. The project manager, if he feels an "additional rent" charge is warranted, may impose it after giving notice to the tenant.[5] If the tenant fails to pay the extra charge as part of his rent, the landlord may bring suit in the New York Civil Court to collect unpaid rent.
 
 
 26
 The "additional rent" charges assessed to instant appellants are as follows. The Humphreys paid a $3 charge for an allegedly clogged toilet. Mrs. Haywood paid a $5 charge for the alleged behavior of her brother, one Mullins, who was not a tenant and was not living in the project, and over whom Mrs. Haywood could exercise little control.[6] Another charge of $10 was assessed for similar acts of her brother, and upon nonpayment and intervention of counsel, the charge was rescinded. The Lockmans were fined three times for alleged conduct of their son: (1) $2 for playing ball on HA property (the Lockmans contend he was on neighboring property); (2) $5 for riding a bicycle on HA walks (the Lockmans contend that he was only repairing the bicycle); and (3) $2 for another ball-playing incident which was reduced to $1 when the Lockmans argued that the grass would not be harmed due to the snow cover. The Lockmans paid these charges.
 
 
 27
 As to the procedures for assessing "additional rent" charges, appellants seek the following relief: (1) an injunction against the assessment of these charges without a prior fair hearing with the essential safeguards sought in the termination cases; (2) an injunction against requiring tenants to sign leases purporting to permit the assessment of these charges; (3) an injunction against failure to renegotiate leases; (4) an injunction against any further "additional rent" charges based on standards and conduct which are vague and not specifically made known to tenants; (5) a declaratory judgment that the present procedures are constitutionally deficient; and (6) a money judgment for the amount of the charges paid by Haywood and Lockman.
 
 II.
 
 28
 Appellants challenge the constitutionality of the HA procedures for terminating tenancies on the grounds of non-desirability and breach of the rules and regulations and for assessing "additional rent" charges, contending that these procedures deny members of their classes their rights to due process of law. Although the termination of tenancy procedures afforded by the HA in this case admittedly satisfy the requirements of the Department of Housing and Urban Development circular of February 7, 1967, considered by the Supreme Court in Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), this is not dispositive of the question of whether the procedures satisfy the due process requirements of the Fourteenth Amendment. See Thorpe, supra, 393 U. S. at 283-284, 89 S.Ct. 518; In re Williams, 309 N.Y.S.2d 454 (Sup.Ct. Westchester County, April 10, 1970). But see Chicago Housing Authority v. Stewart, 43 Ill.2d 96, 251 N.E.2d 185 (1969), cert. denied, 397 U.S. 1000, 90 S.Ct. 1147, 25 L.Ed.2d 410 (March 23, 1970).
 
 
 29
 Nor is it conclusive in the consideration of appellants' constitutional claims to argue that there is no constitutional right to continue living in public housing projects. See Chicago Housing Authority v. Blackman, 4 Ill.2d 319, 122 N.E.2d 522, 524 (1954); Municipal Housing Authority v. Walck, 277 App. Div. 791, 97 N.Y.S.2d 488 (1950); cf. Lynch v. United States, 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (Brandeis, J.). The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be deemed to be a privilege. See Goldberg v. Kelly, 397 U.S. 254, 262-63, 90 S.Ct. 1011, 1017, 25 L. Ed.2d 285 (March 23, 1970); Willner v. Committee on Character & Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Hornsby v. Allen, 326 F.2d 605, 609 (5 Cir. 1964); Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L. Rev. 1439, 1451-54 (1968); Note, Another Look at Unconstitutional Conditions, 117 U.Pa.L.Rev. 144 (1968).
 
 
 30
 Since these actions were dismissed at the pleadings stage, we must view the allegations in the complaints and supporting affidavits in the light most favorable to the appellants, see p. 857 supra; in this light we find that appellants have a claim for relief. Certain aspects of the alleged present HA procedures cannot stand without a convincing showing at trial that the HA has a compelling need for procedural expedition.
 
 
 31
 "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); Dixon v. Alabama State Bd. of Education, 294 F.2d 150, 155 (5 Cir. 1961.) The minimum procedural safeguards required by due process in each situation, depend on the nature of the governmental function involved and the substance of the private interest which is affected by the governmental action. Goldberg v. Kelly, supra, 397 U.S. at 263, 90 S.Ct. at 1017; see Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 162-163, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Since these competing interests have not been fully developed at the trial level, it is not now appropriate for this court to prescribe the minimum necessary procedural requirements. However, if appellants can show at trial the existence of certain of the pleaded HA procedures, we hold that they will have made out a prima facie case for relief; the exact nature and extent of that relief can only be determined after trial.
 
 A.
 
 32
 We consider first the procedures for terminating tenancies on the ground of non-desirability. We find this procedure may be deficient in four respects. First, summary notice such as that sent to the tenants here of the non-desirable conduct under consideration by the TRB is inadequate. See In re Williams, supra 309 N.Y.S.2d at 460. The one-sentence notices sent to the present appellants were insufficient to notify them even of the particular conduct thought by the TRB to be most serious. But since the TRB bases its decision on the tenant's entire folder, detailed notice as to the particular conduct thought to be most serious would be inadequate to give the tenant advance notice of all the items which might be considered against him so that he might challenge these items.
 
 
 33
 The purpose of requiring that notice be given to the tenant before the hearing is to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence. The instant one-sentence summary notices are inadequate for this purpose. Willner v. Committee on Character & Fitness, 373 U.S. 96, 105, 107, 83 S.Ct. 1175, 10 L. Ed.2d 224 (1963); Dixon, supra, 294 F. 2d at 158-159. Nor does the conference between the project manager and the tenant cure the deficiency in the notice, see Goldberg v. Kelly, supra, 397 U.S. at 270, 90 S.Ct. at 1020, since the manager does not divulge all entries in the folder some of which may influence the TRB's decision.
 
 
 34
 Second, denying tenants access to the material in their folders, when the entire folder is considered by the TRB in its determination of eligibility, deprives the tenants of due process. Goldberg v. Kelly, supra, 397 U.S. at 270, 90 S.Ct. at 1021. A hearing at which the tenant can rebut evidence against him would be of little value if the TRB's ultimate decision can rest on items in the tenant's folder of which he has no knowledge and hence has had no opportunity to challenge. Willner, supra, 373 U.S. at 107, 83 S.Ct. 1175 (Goldberg, J., concurring).
 
 
 35
 If secrecy must be preserved as to some items in the tenant's folder, then these items may not be relied on in the decision of the HA. The decision must be based solely on the evidence adduced at the hearing. Goldberg v. Kelly, supra, 397 U.S. at 271, 90 S.Ct. at 1022. Although it is unnecessary to write a full judicial opinion, the HA should "demonstrate compliance with this elementary requirement" and "state the reasons for [its] determination and indicate the evidence [it] relied on." Id. at 271, 90 S.Ct. at 1022; see In re Williams, supra 309 N.Y.S.2d at 460.
 
 
 36
 Third, denying the tenant the opportunity to confront and cross-examine persons who supplied information in the tenant's folder upon which HA action is grounded is improper. Goldberg v. Kelly, supra, 397 U.S. at 270, 90 S.Ct. at 1021; Willner, supra, 373 U.S. at 107, 83 S.Ct. 1175 (Goldberg, J., concurring); In re Williams, supra 309 N.Y. S.2d at 460; see Dixon, supra, 294 F.2d at 159. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, supra, 397 U.S. at 269, 90 S.Ct. at 1021.
 
 
 37
 Under the present procedures, it appears that often the tenant is not even advised as to the source of many of the entries in his folder; preliminary disclosure of this information is, of course, necessary before the tenant can decide whether to confront the person supplying the damaging entry in his folder. If disclosure of the names of persons supplying information in the folder, or the subsequent confrontation at a hearing between the tenant and such persons is deemed to be undesirable because of possible hostility amongst housing project neighbors, the HA may not base its determination on such information. Goldberg v. Kelly, supra, at 270, 90 S.Ct. at 1022; see Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).
 
 
 38
 Finally, we find that the HA's failure to disclose the rules and regulations in the TRB Handbook governing the TRB panel at the hearing concerning termination for non-desirability may be found to be improper. See Goldberg v. Kelly, supra, 397 U.S. at 271, 90 S.Ct. at 1022 ("The decision maker's conclusion as * * * must rely solely on the legal rules and evidence adduced at the hearing" [emphasis added]). Appellants allege that this information is necessary to adequate preparation of the tenant's substantive case before the TRB. If this is established at trial, these regulations must be made generally available prior to the hearing. The HA's argument, that the regulations contained in the Handbook are merely internal procedural guidelines, may be considered by the trial court in determining whether, in fact, the Handbook is necessary in preparing a tenant's case before the TRB.
 
 B.
 
 39
 Next, we consider the procedures for terminating tenancies on the ground of violation of rules and regulations and for assessing "additional rent" charges. Each procedure would seem to suffer the first three deficiencies of the TRB procedure. The tenant should be notified in advance of the complete grounds for the proposed action; should have access to all the information upon which any decision will be based, and should be afforded the right to confront and cross-examine witnesses in appropriate circumstances. In addition, it would seem that the tenant should be afforded the opportunity to present his side of the case in the presence of an impartial official, not merely to the project manager who instituted the proposed action against the tenant.[7] Goldberg v. Kelly, supra, at 271, 90 S.Ct. at 1021; cf. In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); Wasson v. Trowbridge, 382 F.2d 807, 813 (2d Cir. 1967); compare Administrative Procedure Act § 5, 5 U.S.C. § 554 (1966); Note, Public Landlords and Private Tenants: The Eviction of "Undesirables" From Public Housing Projects, 77 Yale L.J. 988, 994, 1004-05 (1968).
 
 
 40
 Although a full-fledged adversary hearing need not be afforded in all cases, the tenant must be adequately informed of the nature of the evidence against him and accorded an adequate opportunity to rebut the evidence. Willner, supra, 373 U.S. at 107, 83 S.Ct. 1175 (Goldberg, J., concurring). Indeed in the cases of violations of rules and regulations and of "additional rent" charges, the evidence against the tenant is quite likely to come from third parties. In such cases, the tenant should be permitted to challenge the person supplying that evidence. The language of Mr. Justice Frankfurter concurring in Joint Anti-Fascist Refugee Committee, supra, is apt:
 
 
 41
 "The validity and moral authority of a conclusion largely depend on the mode by which it was reached. Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done." 341 U.S. at 171-172, 71 S.Ct. at 649.
 
 
 42
 The HA's argument that the "additional rent" charges are provided for in the HA lease is not dispositive of the question of the fairness of the procedures under which said charges are imposed. Holloway v. Department of Housing and Urban Development, 418 F.2d 242 (5 Cir. 1969); see Vinson v. Greenburgh Housing Authority, 29 A. D.2d 338, 288 N.Y.S.2d 159 (1968), leave to appeal granted, (1969). Nor is it persuasive in the posture of this case to argue that a tenant may challenge the additional rent charges by refusing to pay them and by defending in court against the HA's suit for nonpayment of rent. The cost of defending in court and the hazards envisioned by a public housing tenant in refusing to pay rent, would probably dissuade all but the boldest tenant from contesting an "additional rent" charge in this manner. Nor can the small size of the "additional rent" charges be relied on to deny tenants automatically fair procedures. To be sure, the size of the charges is relevant to the question of the burdensomeness of the required procedures, but even small charges can have great impact on the budgets of public housing tenants, who are by hypothesis below a certain economic level. See Goldberg v. Kelly, supra, 397 U.S. at 264, 90 S.Ct. at 1017.
 
 III.
 
 43
 The rest of the HA's arguments will be discussed briefly.
 
 
 44
 A. Jurisdiction, Substantiality, Case or Controversy, and Abstention.
 
 
 45
 First the HA argues that the present action does not come within the grant of jurisdiction under the Civil Rights Act, 28 U.S.C. § 1343(3) (1962), contending that appellants are claiming at most a deprivation of property which was not comprehended by the Civil Rights Act. See McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969); Bradford Audio Corp. v. Pious, 392 F.2d 67 (2d Cir. 1968); Hague v. Committee for Industrial Organization, 307 U.S. 496, 531-532, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (Stone, J., concurring). Unlike the cases cited which involved property rights (and incidental civil rights), the instant actions allege deprivations of procedural due process, a civil right, which may ultimately lead to the loss of a property right, to wit, tenancy in public housing projects. The present challenges are quite similar to the challenges to the procedures for admission into public housing, which we held we had jurisdiction to consider in Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968), and to the challenges to the procedures for terminating welfare benefits considered by the Supreme Court, Goldberg v. Kelly, supra; Wheeler v. Montgomery, 397 U. S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (March 23, 1970). See Holloway, supra; Quevedo v. Collins, 414 F.2d 796 (5 Cir. 1969); Lewis v. Housing Authority, etc., 397 F.2d 178 (5 Cir. 1968); Ruffin v. Housing Authority, etc., 301 F.Supp. 251 (E.D.La.1969).
 
 
 46
 Since only the constitutionality of the procedures used by the HA are in question here, our jurisdiction in this case does not require the federal courts to undertake the review of the merits of every HA action taken in regard to tenants. Such review properly remains in the jurisdiction of the appropriate state courts. See, Note, Public Landlords and Private Tenants: The Eviction of "Undesirables" From Public Housing Projects, 77 Yale L.J. 988, 1003 (1968).
 
 
 47
 Next the HA contends that these actions lack a substantial federal question and that they do not constitute a case or a controversy. As shown above, the pleadings present a meritorious as well as a substantial federal question. See Commonwealth of Pennsylvania v. Brown, 260 F.Supp. 323 (E.D.Pa.1966), rev'd on other grounds, 373 F.2d 771 (3 Cir.1967). In Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) the Supreme Court did not consider the requirement of procedural safeguards beyond those provided in the HUD circular.
 
 
 48
 The HA argues that there is no case or controversy because no eviction suits have been filed against any named plaintiffs, because no actions to collect unpaid "additional rent" charges have been commenced against any plaintiff, and because no plaintiff has shown how the requested procedures would have affected the HA's action against them. The fact that the HA suspended its procedures to evict the named plaintiffs after the institution of these actions cannot deprive these actions of their controversial nature. The imminence of eviction at the outset of this action provides sufficient controversy. See Goldberg v. Kelly, supra, 397 U.S. at 256 n. 2, 90 S.Ct. at 1014 n. 2. The same is true of the imminence of the HA actions in state courts to collect unpaid "additional rent" charges. Clearly there is a controversy over the rent charges which have already been paid. Finally, the requested relief in all actions would have afforded the named plaintiffs information which would have been useful in meeting the HA's case against them.[8]
 
 
 49
 Next, the HA contends that this is an appropriate case for the federal courts to abstain, allowing the claims in these actions to be determined by the state courts in the first instance. Sibron v. New York, 392 U.S. 40, 58, 88 S.Ct. 1889, 1912, 20 L.Ed.2d 917 (1968); Zwickler v. Koota, 389 U.S. 241, 249-250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Randell v. Newark Housing Authority, 384 F.2d 151 (3 Cir. 1967), cert. denied sub nom. Avent v. Newark Housing Authority, 393 U.S. 870, 89 S.Ct. 158, 21 L.Ed.2d 139 (1968). We rejected the identical argument of appellee HA in Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968). We are not dealing here with the administration of a complex state process in which state courts have greater expertise. The actions here are not entangled in state law. Rather, the only issues here are whether certain HA procedures pass muster under the due process clause of the Fourteenth Amendment to the federal Constitution. Federal courts are fully competent to consider such issues and are the primary forum for vindicating federal rights.
 
 
 50
 B. State Review.
 
 
 51
 We have already considered and rejected the HA's contention that the procedures for assessing "additional rent" charges are cured by the opportunity of the tenant to defend a rent-collection action in the New York Civil Courts. The HA also contends that any defects in the challenged procedures for terminating tenancies are cured by the availability of an action commenced by the tenant in New York Civil Court under C.P.L.R. article 78. New York Civil Practice Law and Rules §§ 7801-7806 (McKinney, 1963). See Randell v. Newark Housing Authority, supra.
 
 
 52
 Although upon commencement of an article 78 action, the holdover action by the HA may be stayed, the tenant must in effect prove that the HA decision was arbitrary and capricious or an abuse of discretion in order to get relief. Thus, the tenant has the burden of commencing an article 78 action and of overcoming the presumption of regularity attacking the acts of the HA. Moreover, the tenant must carry this burden without access to his own folder, the exact basis for the HA decision against him or a transcript of the TRB hearing.[9] Such review commenced by the tenant cannot be a substitute for fair procedures in the decision of the HA in the first instance.
 
 
 53
 C. Findings Below.
 
 
 54
 It is not clear whether the decision below was a dismissal under Rule 12(b) of the Federal Rules of Civil Procedure or whether it was a summary judgment under Rule 56. In either event, several of the findings of fact made by the trial court below are in error, either because all favorable inferences were not given the complaint and supporting affidavits as required if the dismissal were under Rule 12(b), or because facts were found where the pleadings indicated that there was a genuine issue of material fact. Federal Rules of Civil Procedure, Rule 56(c).
 
 
 55
 It suffices simply to mention these erroneous findings. First, the finding that notice of the non-desirable conduct was given to the tenant — notice here was summary and inadequate. Second, the finding that the HA published its rules governing the TRB panel proceedings in non-desirability cases — this finding is unwarranted in the face of appellants' allegations to the contrary.[10] Finally, the finding that tenants were permitted to inspect their folders before the TRB hearing — this is exactly contrary to the allegations in the Humphrey complaint and in supporting affidavits.[11]
 
 
 56
 D. Exhaustion of Administrative Remedies — Rolle.
 
 
 57
 While ordinarily we would dismiss appellant Rolle's appeal, since she did not go through with the TRB hearing when her procedural requests were denied, see McKart v. United States, 395 U.S. 185, 194-195, 89 S.Ct. 1657, 23 L. Ed.2d 194 (1969); cf. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, etc., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), we will not yet dismiss her action for failure to exhaust available administrative remedies. It is true that if Rolle had proceeded through the TRB hearing, the initial determination of ineligibility against her might have been reversed.
 
 
 58
 But since Humphrey has brought an identical action and has exhausted his TRB remedies, and since Humphrey sues on behalf of the class of all tenants similarly situated,[12] we hold that Rolle should be permitted to continue as a named plaintiff in these actions.[13]
 
 
 59
 E. Validity of the Classes.
 
 
 60
 Although the facts leading to the HA action in the case of each named plaintiff were different, the procedures used in each type of action were identical.[14] This provides the common question of law and fact for the members of the respective classes. Rule 23(b) (2), Federal Rules of Civil Procedure; Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968); Wheeler v. Montgomery, 397 U. S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (March 23, 1970) (class action on behalf of all recipients of old age benefits subject to California welfare termination provisions); see Quevedo v. Collins, 414 F.2d 796 (5 Cir. 1969). If appellants' allegations as to the other prerequisites of Rule 23(a) are established at trial, then their classes will be properly constituted.
 
 IV.
 
 61
 The minimum procedural requirements of due process under the Fourteenth Amendment must reflect the balance between the government's interest in efficient administration and the nature of the individual's interest being affected by governmental action. We hold only that granting every favorable inference to plaintiffs' complaints and affidavits, it appears that the HA's procedures are deficient in several specific aspects. Upon trial, the HA may be able to show great need for expedited procedures, or the plaintiffs may fail to substantiate all of their allegations. Therefore the fashioning of a remedy or a declaratory judgment must await the full trial of these actions.[15]
 
 
 62
 Reversed and remanded for consideration of plaintiffs' motion for preliminary relief and for trial on the merits.
 
 
 
 Notes:
 
 
 [1]
 A family is non-desirable if it constitutes "* * * a detriment to health, safety or morals of its neighbors or the community; an adverse influence upon sound family and community life; a source of danger or a cause of damage to the property of the Authority; a source of danger to the peaceful occupation of other tenants, or a nuisance." Tenant Review Handbook, Ch. VII, ¶ I, Appendix B at 4
 
 
 [2]
 The plaintiffs in the instant cases received the following notification of their non-desirable conduct
 Mr. and Mrs. Rolle: "Record of antisocial activities and arrests of your son, Fred, Jr., constituting a threat to the peace and safety of the community."
 Mr. and Mrs. Humphrey: "Illegal acts of Mr. Humphrey, having an adverse effect on the project and its tenants."
 
 
 [3]
 In the case of plaintiff Rolle, upon demand of counsel, the TRB panel permitted counsel to inspect the folder at the premises of the hearing, and offered to grant an adjournment of the hearing if one were requested. In the case of plaintiff Humphrey, however, the folder and the summary of its contents were not made available to the tenant despite repeated requests. Affidavits submitted on behalf of plaintiffs indicate that other tenants, not named in this suit, have been unable to gain access to their folders
 
 
 [4]
 Affidavit of Nancy E. LeBlanc inRolle, January 15, 1967.
 
 
 [5]
 The HA Management Manual requires the project manager to give the tenant an opportunity to tell his side of the story. The manager is also required to summarize the tenant's position and enter the summary in the tenant's folder
 
 
 [6]
 Indeed, Mrs. Haywood attempted to dissuade her brother from visiting the project. She had him committed to a psychiatric ward for observation and she requested HA police to arrest him if he appeared at the project
 
 
 [7]
 In the case of termination on the ground of non-desirability, the TRB as a whole must approve the project manager's recommendation to terminate before there can be an appearance by the tenant before a panel of the TRB. Although this initial TRB approval of the manager's recommendation becomes final if the tenant does not request a hearing, we are not convinced that the panel members' involvement in the initial approval precludes their unbiased participation on the panel at the hearing reviewing the recommendation of the project manager. See Goldberg v. Kelly, supra, at 271, 90 S.Ct. at 1022 ("[P]rior involvement in some aspects of a case will not necessarily bar [an] official from acting as a decision maker. He should not, however, have participated in making the determination under review."); In re Williams, 309 N.Y.S. 2d 454 (Sup.Ct. Westchester County April 10, 1970); cf. Gonzales v. United States, 364 U.S. 59, 63, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960); Marcello v. Bonds, 349 U.S. 302, 311, 75 S.Ct. 757, 99 L. Ed. 1107 (1955)
 
 
 [8]
 In the case of Lockman, confrontation and cross-examination of the persons reporting the alleged ball playing and bicycle riding might have revealed errors in the reports. In Escalera's case, disclosure to the tenant of the folder may have enabled the tenant to dispel the project manager's belief that they still possessed a dog. In the Humphrey's case, disclosure of the folder may have enabled Mrs. Humphrey to paint her family in a more acceptable light than the folder did, and the decision to terminate was grounded on the entire folder, not just the arrest and conviction of Mr. Humphrey. The same argument applies in the case of Rolle. (There is still a question of exhaustion of administrative remedies in the case of Rolle; seeinfra.)
 
 
 [9]
 Although the HA may be required to reveal a ground for its action in defense of an article 78 action, see Vinson v. Greenburgh Housing Authority, 29 A.D.2d 338, 288 N.Y.S.2d 159 (1968) (two judges dissenting), leave to appeal granted, (1969), it is not required to present the tenant's entire folder to the article 78 court nor to substantiate the entries therein in an adversary proceeding. See also, Pittsburgh Housing Authority v. Turner, 201 Pa.Super. 62, 191 A.2d 869 (1963); Columbus Metropolitan Housing Authority v. Simpson, 85 Ohio App. 73, 85 N.E. 2d 560 (1949); Chicago Housing Authority v. Ivory, 341 Ill.App. 282, 93 N.E.2d 386 (1950)
 
 
 [10]
 The fact that appellants had possession of a portion of a dated copy of the TRB Handbook does not conclusively contradict their allegation of non-disclosure of the current rules and regulations
 
 
 [11]
 The fact that the HA offered inspection of the file in Rolle's case does not contradict the allegations as to the general procedures. The record seems to justify the conclusion that the offer in Rolle's case was extraordinary, and was brought on by fear of the instant litigation. Indeed, appellee's affidavit does not even state that tenants are permitted to inspect their files. It states only that upon requestdata in the folder is made available to the tenant or counsel.
 
 
 [12]
 The question is still open whether Rolle's claim is representative of the typical claims of the class. See Rule 23(a), Federal Rules of Civil Procedure. Rolle, unlike many other allegedly non-desirable tenants, was given access to her file prior to the TRB hearing
 
 
 [13]
 Any relief won by the class would apparently be available to Rolle in the future; and the HA seems to hint that Rolle is still entitled to a hearing before a panel of the TRB, since no action has been taken against her as yet, after her initial refusal to participate
 
 
 [14]
 The one exception is the TRB panel's offer to allow Rolle to inspect her file before the hearing. See note 11,supra.
 
 
 [15]
 We express no opinion on the validity of the HA's substantive grounds for taking the three types of actions in this case. The substantive questions are not in issue. See Note, Public Landlords and Private Tenants: The Evictions of "Undesirables" From Public Housing Projects, 77 Yale L.J. 988, 1003 (1968)