**FOREST CITY MANAGEMENT, INC., d.b.a. Ashtabula Towers, Appellee,**

v.

**TACKETT, Appellant.**

[Cite as *Forest City Mgt., Inc. v. Tackett,* 148 Ohio App.3d 667, 2002-Ohio-4101.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2001–A–0051.

Decided Aug. 9, 2002.

---

Ivan L. Redinger, Jr., for appellee.

Kevin R. Painter and Ashtabula County Legal Aid, for appellant.

---

DONALD R. FORD, Judge.

{¶ 1} Appellant, Sumpter Tackett, appeals the June 29, 2001 judgment entry of the Ashtabula Municipal Court.

{¶ 2} On April 6, 2001, appellee, Forest City Management, Inc., d.b.a. Ashtabula Towers, served appellant with a notice of proposed termination of lease ("notice of termination"). The notice of termination stated that "[s]pecifically, on numerous occasions, including but not limited to 9/1/98, 12/11/98, 2/15/99, 2/16/00, 12/15/00 and 3/30/01, you [appellant] engaged in acts that disturbed the rights and comforts of other residents and staff, and which were intimidating, alarming, annoying, abusive and obscene to residents and staff; such conduct has been continued and repeated."

{¶ 3} On May 18, 2001, appellee served appellant with a "Notice to Leave the Premises." Thereafter, on May 31, 2001, appellee filed a forcible entry and detainer complaint for possession of residential premises and money damages against appellant. A hearing on the action was held on June 20, 2001. However, appellant appeared pro se, so the trial court granted appellant seven days to retain counsel. A second hearing took place on June 27, 2001, and appellant appeared with counsel.

{¶ 4} Appellant and appellee entered into a lease agreement on February 2, 1998, providing appellant with an apartment. Initially, the term of the lease was for one year and then it became a month-to-month tenancy. The unit leased by appellant is in a rent-subsidized building.

{¶ 5} At the trial, appellant claimed that the notice of termination was ambiguous and did not state with specificity the reasons for the termination. Thereafter, several witnesses for appellee testified. Donna Turner ("Turner"), appellee's property manager, indicated that appellant had the right to meet with management within ten days of the notice of termination being served, but appellant did not exercise that right. Turner explained that there were several incidents of harassment by appellant against her staff members, and they were hindered from performing their job duties. According to Turner, some residents also complained about appellant. She also stated that management for appellee had met with appellant "several times about his issues [and he] indicated that he would stop, which he [did] for a couple of weeks." Then, he began harassing again.

{¶ 6} Ronald Hull ("Hull"), the maintenance custodian for appellee, described some of the incidents that occurred between him and appellant. According to Hull, appellant told Hull that he hated him and also called Hull a devil. On another occasion, appellant told Hull to go to hell. Appellant has also balled up his fist like he wanted to hit somebody.

{¶ 7} A resident in the apartment complex, Virginia Willing ("Willing") took the stand and related that many times she would be on the elevator with appellant, and he would ask her questions. However, when she would exit the elevator, appellant "would say don't go by the end people, the black people." She also observed appellant accuse Hull of chasing him with the vacuum cleaner. Willing recalled that appellant "kept saying * * * that the black people think they own the place and run the place." She explained that she is "uneasy to ride down the elevator if he's on the elevator."

{¶ 8} Another resident, Marilyn Raymond ("Raymond"), testified that appellant approached her at a party and told her he wanted to talk. She informed appellant that she did not know whether she would be home. However, two days later Raymond opened her front door, and appellant was standing there. Raymond also stated that she overheard appellant make a statement that Turner and Hull "got together and they were out to get him."

{¶ 9} On June 29, 2001, the trial court entered judgment in favor of appellee. Specifically, the trial court concluded:

{¶ 10} "[A]lthough none of the individual instances of conduct by [appellant] would constitute a breach of the lease in and of itself, the continuing nature of the

incidents and the continuing conduct of [appellant], added together, do constitute a breach of Section 19(d) of the lease and [R.C.] 5321.05(A)(8) and said breach is a material breach which has disturbed the 'rights and comfort of neighbors.'"

{¶ 11} It is from that entry that appellant timely filed the instant appeal. On July 16, 2001, appellant and appellee entered into an agreed judgment dismissing appellee's claim for damages and staying execution of the appellee's judgment pending appeal. Appellant advances a single assignment of error:

{¶ 12} "The [t]rial [c]ourt committed reversible error by ruling that [a]ppellee's [notice of termination] stated the reasons for the proposed termination of [appellant's] tenancy with the specificity requirements of federal law and the lease agreement."

{¶ 13} In his sole assignment, appellant argues that the trial court erred in determining that appellee's notice of termination stated the reasons with specificity as required by federal law and the lease agreement.

{¶ 14} In determining whether the notice of termination satisfied both the state and federal requirements, this court must examine each of the applicable requirements. Section 880.607, Title 24, C.F.R. requires a certain procedure for the termination of a tenancy:

{¶ 15} "(b) Entitlement of Families to Occupancy—

{¶ 16} "(1) Grounds. The owner may not terminate any tenancy except upon the following grounds:

{¶ 17} "(i) Material noncompliance with the lease;

{¶ 18} "* * *

{¶ 19} "(3) Material noncompliance.

{¶ 20} "(i) Material noncompliance with the lease includes:

{¶ 21} "(A) One or more substantial violations of the lease; or

{¶ 22} "(B) Repeated minor violations of the lease that disrupt the livability of the building; * * * interfere with the management of the building or have an adverse financial effect on the building.

{¶ 23} "* * *

{¶ 24} "(c) Termination notice.

{¶ 25} "(1) The owner must give the family a *written notice* of any proposed termination of tenancy, *stating the grounds and that the tenancy is terminated on a specified date* and advising the family that it has an *opportunity to respond* to the owner.

{¶ 26} "(2) * * * Where the termination notice is based on material noncompliance with the lease or material failure to carry out obligations under a State landlord and tenant act pursuant to paragraph (b)(1)(i) or (b)(1)(ii) of this section, the time of service must be in accord with the lease and State law." (Emphasis added.)

{¶ 27} Hence, the notice of termination must (1) be in writing, (2) state the grounds for the proposed termination and that the tenancy is terminated on a specified date, and (3) advise the family that it has an opportunity to respond. Where the termination is due to material noncompliance with the lease, Section 880.607(c)(2), Title 24, C.F.R. provides that the time of service of the notice be in accordance with the lease and state law. Here, the lease at paragraph 24, titled "Termination of Tenancy," states:

{¶ 28} "b. Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement. The Landlord may terminate this Agreement only for:

{¶ 29} "(1) the Tenant's material noncompliance with the terms of this Agreement;

{¶ 30} "* * *

{¶ 31} "The term material non-compliance with the Lease includes: (1) one or more substantial violations of the Lease; (2) repeated minor violations of the Lease that * * * interfere with the management of the building * * *.

{¶ 32} "c. If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Tenant written notice of the proposed termination. * * * Notices of proposed termination for other reasons [material noncompliance] must be given in accordance with any time frames set forth in State and local law. Any [Housing and Urban Development] required notice period may run concurrently with any notice period required by State or Local law."

{¶ 33} Further, the lease states that the notice must (1) specify the date the agreement is terminated, (2) give the grounds for termination with enough detail for the tenant to prepare a defense, (3) advise the tenant he has ten days to discuss the proposed termination, and (4) advise the tenant of his right to defend the action in court. The applicable state law, R.C.1923.04(A), mandates, as a prerequisite to a forcible entry and detainer action, that a tenant be served with a three-day notice to leave the premises that contains certain mandatory language set forth in a "conspicuous manner."

{¶ 34} Both the lease agreement and the rules and regulations set forth by the Housing and Urban Development require that a landlord's notice of termination " 'state the grounds for termination with enough detail for the tenant to prepare a defense.' " *Associated Estates Corp. v. Bartell* (1985) 24 Ohio App.3d

6, 10, 24 OBR 28, 492 N.E.2d 841. The purpose of mandating that the notice of termination contains reasons is " 'to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence.' " Id., quoting *Escalera v. New York City Hous. Auth.* (C.A.2, 1970), 425 F.2d 853, 862. Notices of termination have been found to be insufficient where they contain only one sentence which is written in a vague and conclusory manner and which fails to set forth a factual statement for the termination. Id.

{¶ 35} After reviewing the record, it is our view that the notice of termination satisfied both state and federal requirements. The notice of termination was in writing, stated the grounds and termination date, and advised appellant that he had a chance to discuss the proposed termination. Specifically, the notice of termination stated that "on numerous occasions, including but not limited to 9/1/98, 12/11/98, 2/15/99, 2/16/00, 12/15/00 and 3/30/01, [appellant] engaged in acts that disturbed the rights and comforts of other residents and staff, and which were intimidating, alarming, annoying, abusive and obscene to residents and staff; such conduct has been continued and repeated." This statement was not vague or conclusory and described the nature of the complaints. In addition to listing the dates, the notice of termination also referred to the specific provisions in the lease agreement, the resident handbook, and the Revised Code.

{¶ 36} The record also reveals that appellant was made aware of the evidence against him. Furthermore, appellant's counsel was given full access to appellant's file, which contained the incident reports. There is nothing in the record to suggest that the evidence surprised appellant.

{¶ 37} Moreover, the trial court also concluded that the federal rules and regulations had been satisfied. Likewise, the trial court stated that none of the individual instances of conduct violated the lease, but that the continuing nature of the conduct by appellant did disturb the rights and comfort of his neighbors. We cannot substitute our judgment for that of the trial court, since the trial court was in the best position to "view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Therefore, we conclude that appellee's notice of termination fulfilled all of the applicable legal requirements contained in Section 880.607, Title 24, C.F.R. and the terms of the lease.

{¶ 38} For the foregoing reasons, appellant's lone assignment of error is not well taken. The judgment of the Ashtabula Municipal Court is affirmed.

Judgment affirmed.

ROBERT A. NADER and DIANE V. GRENDELL, JJ. concur.