Joseph BOGAN et al.

v.

NEW LONDON HOUSING AUTHOR-
ITY et al.

Civ. No. H–130.

United States District Court,
D. Connecticut.

Nov. 5, 1973.

Elliot Taubman, New London, Conn., for plaintiffs.

Merrill S. Dreyfus, New London, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, Chief Judge.

This is an action for declaratory relief brought against defendant housing authority (hereinafter referred to as defendant) [1] by four named tenants who purport to sue on behalf of all residents in the moderate income rental housing of defendant.[2] Although four claims for relief are presented, all of this legal mastication is directed towards a single bone of contention: defendant's prohibition of its tenants' possession of dogs. Plaintiffs seek to wrest this bone from defendant by asserting that: (1) defendant seeks to evict certain plaintiffs in violation of their right to due process of law, insofar as defendant has no "just cause" to evict said plaintiffs; (2) defendant seeks to evict certain plaintiffs in violation of their right to due process of law, insofar as defendant has failed to give adequate notice of the grounds for eviction and to provide an adequate hearing thereon, prior to seeking the eviction of said plaintiffs; (3) defendant seeks to evict certain plaintiffs in violation of their rights to freedom of speech and equal protection of the laws; and (4) through defendant's actions in seeking the eviction of certain plaintiffs, said plaintiffs will be denied equal protection of the laws through the appeal bond requirements of Conn.Gen. Stats. § 52–542, should said plaintiffs seek to litigate their constitutional claims in the Connecticut courts in defense of defendant's eviction action.

---

1. Also named as defendants are the Commissioners and Chief Executive of the New London Housing Authority. For convenience I refer to the defendant in the singular, since it is the Housing Authority's institutional power which is in issue.

2. The complaint purported to bring suit on behalf of all residents of low income and moderate rental housing operated by defend-

ant. Defendant's one low income housing project is federally funded, and is consequently subject to extensive federal regulation. Thus different issues are presented as to defendant's regulatory powers regarding low income rather than moderate rental housing. My understanding after oral argument was that plaintiffs sue on behalf of residents of defendant's moderate rental housing only.

This Court's jurisdiction is alleged under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343 and 2201. Defendant has moved for dismissal of the action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### Facts

The parties have submitted a stipulation of facts. Because plaintiffs now rely on this stipulation rather than on the factual allegations of their complaint, and because other undisputed facts were adduced at oral argument on the motion to dismiss, the Court deems the motion to dismiss to be a motion for summary judgment. Fed.R.Civ.P. 12(b), 56.

Defendant operates one federally assisted low income housing project and six moderate rental housing projects which do not receive federal assistance. State aid to defendant consists principally of measures which enhance defendant's credit and consequent ability to finance its own operations. Defendant may sue and be sued, issue bonds, and exercise the power of eminent domain. Conn.Gen.Stats. §§ 8–44, 8–50, 8–52. Defendant's bonds are tax exempt, Conn.Gen.Stats. § 8–58, but are not guaranteed by the state or any political subdivision thereof. Conn.Gen.Stats. § 8–52. Defendant is eligible for state aid for moderate rental housing in the form of loans and guarantees of defendant's notes. Conn.Gen.Stats. § 8–70. Such state assistance is funded through the sale of state bonds. Conn.Gen.Stats. § 8–80. While defendant may establish a housing authority police force, its officers are subject to the supervision and control of the municipality within which defendant is located. Conn.Gen.Stats. § 8–44b.

Defendant requires all tenants to execute a written lease creating a month-to-month tenancy coinciding with the calendar month, and providing for automatic renewal of said lease absent written notice at least ten days before the end of any month. Under the lease the lessee agrees "Not to keep dogs on the premises; nor to keep cats or other pets on the premises except with the approval of the Lessor." Blanket approval has been extended for each family to maintain at least one cat.

The named plaintiffs are the Bogan and Cunningham families. The Bogans have persisted in keeping a small dog. The Cunninghams had a dog until giving it up under threat of eviction. The Bogans were served on July 7, 1973, with a complaint seeking their eviction. This complaint, alleging the Bogans' breach of their lease by keeping a dog on their leased premises, was later withdrawn. Defendant gave the Bogans notice to quit the premises, and a second complaint seeking their eviction was then served on them on August 7, 1973. This second complaint alleged two grounds for eviction: termination of the lease by the notice to quit, and breach of the lease by possession of a dog. The Cunninghams have not been threatened with eviction since relinquishing their dog. The stipulation of facts states, and defendant has represented to the Court, that defendant will not press its eviction action against the Bogans should they give up their dog.[3] Mrs. Bogan desires to keep the dog as protection against intruders.

Prior to July 7, 1973, the named plaintiffs and others had circulated a petition seeking a change in the terms of defendant's lease to permit tenants to possess no more than one dog per family. This petition was signed by residents of 71 of the 160 units of the Bates Woods housing project, one of the six moderate rental housing projects of de-

---

3. In addition to the Bogans and the Cunninghams, two other families in the same housing project have apparently persisted in keeping dogs over the objection of defendant. These two families are not party to this action save as members of the purport-

ed class of plaintiffs. One of these families finally relinquished their dog prior to service of process for eviction; a judgment of eviction has been entered in state court against the fourth family, which did not give up its dog.

fendant, and the project within which all the named plaintiffs reside. The petition was placed on the agenda of the regular monthly meeting of defendant's officers on July 9, 1973. The named plaintiffs were present at the meeting, and the general characteristics of dogs were discussed in relation to the proposed change in the pet clause of defendant's standard lease. The named plaintiffs' individual interests in possession of their dogs were not discussed. On July 13, 1973, a letter was distributed to all residents of Bates Woods and the adjacent Briarcliff moderate rental housing project, wherein it was stated over the signature of defendant's chairman that after due consideration the prohibition against possession of dogs would be retained. This decision was justified on the grounds that dogs are a health and safety nuisance in and around multiple dwelling units, and that only a small percentage of the tenants of both projects seemed dissatisfied with the existing pet clause of the lease. This notice requested the prompt removal of dogs then being maintained at Bates Woods and Briarcliff, with the admonition: "Failure to comply will force the Authority to seek eviction, a step the Authority does not like to take."

### Failure to Join State Officers

■ Although they no longer seek an injunction against the enforcement of Connecticut's summary process eviction appeal bond statute, Conn.Gen.Stats. § 52–542,[4] plaintiffs seek a declaratory judgment that said statute violates their right under the Fourteenth Amendment to equal protection of the laws. See Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). Plaintiffs have failed to join as parties to this action the state officers charged with enforcing this statute. "Where, as here, an indispensable party is not before the court, dismissal must follow." Franz v.

E. Columbia Basin Irr. Dist. 383 F.2d 391, 392 (9th Cir. 1967). Fed.R.Civ.P. 12(b)(7), 19. This portion of plaintiffs' complaint is accordingly dismissed, without prejudice.

### State Action Assumed

■ For this Court to have jurisdiction over plaintiffs' claims against defendant and its officers, those officers must be acting under color of state law. 42 U.S.C. § 1983. As indicated above, defendant has been clothed by state law with several powers and benefits not available to private landlords. I assume, without deciding, that state involvement in defendant's operations is sufficient to render defendant's operations "state action" within the purview of the Civil Rights Act and the Fourteenth Amendment.

### Free Speech and Equal Protection Claims

■ Plaintiffs have alleged a cause of action for violation of constitutional guarantees of freedom of speech and equal protection of the laws. Their free speech claim was premised on the assertion in the complaint that defendant seeks to evict the Bogans because they circulated the petition to change the prohibition against dogs. Following oral argument and discussion thereof by counsel, I find that there is no longer a genuine factual dispute that defendant seeks to evict the Bogans solely because they have persisted in keeping a dog in violation of their lease, and that defendant will desist in its eviction action against the Bogans should they desist in keeping their dog. I accordingly hold that plaintiffs' claim that defendant has infringed their rights under the First Amendment· is utterly without merit.

■ Plaintiffs. also claim that defendant violates the Equal Protection Clause in permitting tenants to keep

---

4. In their complaint plaintiffs requested the convocation of a three-judge court to consider their attack on Conn.Gen.Stats. § 52–542. In later pleadings plaintiffs have indicated that they now feel declaratory relief would suffice. I therefore deem their application for a three-judge court to have been withdrawn.

cats but not dogs. Insofar as this claim suggests that dogs have any equal protection rights, it is plainly frivolous. Insofar as this claim asserts that defendant's prohibition of dogs but not cats is unreasonable, it is subsumed under plaintiffs' more general claim that defendant has no just cause to evict tenants for owning a dog.

### Procedural Due Process Claim

■ Plaintiffs assert that defendant failed to provide the Bogans with adequate notice and a meaningful hearing prior to seeking their eviction, and seek through the Bogans to litigate the constitutional sufficiency of defendant's pre-eviction procedures. It was established in Escalera v. New York City Housing Authority, 425 F.2d 853, 861 (2d Cir. 1970), cert. denied 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), that public housing authorities "cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards[,] even if public housing could be deemed to be a privilege." Escalera went on to note that the "minimum procedural safeguards required by due process in each situation, depend on the nature of the governmental function involved and the substance of the private interest which is affected by the governmental action." 425 F.2d at 861. In the public housing context, this requires notice of the conduct which has led the housing authority to decide to seek eviction of a tenant, and a hearing at which the tenant may rebut this evidence and may confront and cross-examine adverse witnesses. Id., 425 F.2d at 862–863. " 'The fundamental requisite of due process of law is the opportunity to be heard' . : . 'at a meaningful time and in a meaningful manner.' " Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L. Ed.2d 287 (1970).

### Plaintiffs Lack Standing

■ It is clear, however, that plaintiffs have no standing to litigate this issue. There is no longer any dispute in this case as to the fact that defendant's decision to seek the eviction of the Bogans was based exclusively on the Bogans' undisputed possession of a dog on their leased premises. Moreover, defendant is aware of the Bogans' claim of extenuating circumstances. See n.5, infra. Procedural due process does not extend to a hearing on the merits of a given rule or regulation, but only to whether reasonably trustworthy procedures have been established for ascertaining the facts upon which application of the rule or regulation is premised. When these facts are undisputed, no injury can have resulted from an alleged deprivation of procedural due process.

"It is axiomatic that the federal courts do not decide abstract questions posed by parties who lack 'a personal stake in the outcome of the controversy.' " Socialist Labor Party v. Gilligan, 406 U.S. 583, 586, 92 S.Ct. 1716, 1718, 32 . L.Ed.2d 317 (1972). The "gist of the question of standing" is whether the complaining parties have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). No showing has been made that any of the plaintiffs would benefit in other than an abstract way from this court's declaratory judgment that defendant's pre-eviction procedures are constitutionally inadequate.

### Due Process Restraints on Defendant's Power to Evict

I now reach the gravamen of this action: plaintiffs' contention that a public landlord may evict tenants only for "just cause." This proposition first gained credence in this Circuit in Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968), wherein it was declared: "It hardly need be said that the existence of an absolute and uncontrolled discretion in an agency of government vested with the administra-

tion of a vast program, such as public housing, would be an intolerable invitation to abuse. See Hornsby v. Allen, 326 F.2d 605, 609–610 (5 Cir. 1964). For this reason alone due process requires that selection among applicants [for public housing] be made in accordance with 'ascertainable standards,' id. at 612 . . : ." If *applicants* for public housing have a due process right to "ascertainable standards" governing admission procedures, then *a fortiori* those already living in public housing have a due process right to have "ascertainable standards" govern their eviction. This holding, implicit in *Holmes,* was made explicit in *Escalera, supra,* 425 F.2d at 861. *Cf.* McGuane v. Chenango Court, Inc., 431 F.2d 1189 (2d Cir. 1970), cert. denied 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971). But still unresolved is whether the required "ascertainable standards" must also be "reasonable standards."

■ The case from which the *Holmes* court drew its "ascertainable standards" phrase, Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964), concerned the denial without stated reason of an application for a municipal liquor license. In developing the rationale for its conclusion that the responsible agency's failure to establish "ascertainable standards . . . by which an applicant can intelligently seek to qualify for a license" was a denial of due process to unsuccessful applicants, 326 F.2d at 612, the *Hornsby* court offered this alternative formulation of its "ascertainable standards" phrase: "an opportunity to know, through *reasonable* regulations promulgated by the board, of the objective standards which had to be met to obtain a license." 326 F.2d at 610 (emphasis added). And indeed, the danger of an arbitrary abuse of power which impelled the *Holmes* court to demand that ascertainable standards be employed by public housing authorities in allocating their scarce resources, cannot be dispelled unless these standards, once ascertained, are subject to at least minimal judicial review for reasonableness. A publicly declared rule against admission of left-handed persons to public housing would be no less arbitrary by virtue of its announcement.

That ascertained standards must be reasonable was implicit in Judge Zampano's order forbidding the defendant in the instant case from excluding from moderate rental housing persons whose sole means of support was public assistance. See Cumberlander v. New London Housing Authority, Civil No. 12,953 (D.Conn. June 12, 1969). Yet Judge Zampano refused to go beyond ordering cessation of this invidious discrimination against welfare recipients. In denying a request for judicial imposition on defendant of a whole set of "ascertainable standards" governing admission to defendant's housing projects, Judge Zampano declared that "the members of the Authority are far better qualified than this Court to direct the operation of public housing projects in New London. These public officials must be given a fair opportunity to administer their own rules and regulations." *Id.,* at p. 4.

■ Like Judge Zampano, this Court has also expressed its willingness to review the acts of a public housing authority for "arbitrary, capricious, or discriminatory action on the part of governmental officials constitut[ing] a violation of due process principles." McIntyre et al. v. Housing Authority of City of Norwich, Civil No. 13,054 (D. Conn. May 14, 1969), at p. 3. However, I indicated in *McIntyre* and repeat today that this Court will not interfere with the actions of public housing officials unless such review uncovers by clear and convincing evidence some actual arbitrary action by a Housing Authority to the detriment of the parties before me; this Court will not undertake to supervise the day-to-day operation of public housing "on the hypothesis that sometime in the future the Authority may act in an arbitrary, discriminatory or retaliatory manner. . . . [Para.] . . . The expanding concepts of due process, without a doubt, have stimulated an increasing demand in the federal

courts for supervision over the administrative functions carried on by all public bodies. [Citations omitted.] Not all business of municipal bodies involves constitutional law. Federal judges 'do not sit as a super-legislature to determine the wisdom, need, and propriety of laws that touch economic problems, business affairs, or social conditions.' Griswold v. Connecticut, 381 U.S. 479, 482 [85 S.Ct. 1678, 14 L.Ed.2d 510] (1965)." *Id.* at pp. 5, 9.

■■■ From this perspective I conclude that defendant may evict its tenants only for "just cause," but construe "just cause" in an essentially negative fashion. The phrase means that public landlords may not evict for arbitrary, discriminatory or otherwise manifestly improper reasons, regardless of whether the evicting authority styles its action as a proceeding under a lease for breach of a covenant thereof, or as a proceeding for recovery of leased premises after termination of the lease. See Rudder v. United States, 96 U.S.App.D.C. 329, 226 F.2d 51 (1955); Vinson v. Greenburgh Housing Auth., 29 A.D.2d 338, 288 N.Y. S.2d 159, 163 (App.Div.1968), aff'd without opinion, 27 N.Y.2d 675, 314 N. Y.S.2d 1, 262 N.E.2d 211 (1970). The phrase does not mean that public landlords must justify every eviction to the satisfaction of a federal court. I wish to emphasize that by this holding I in no way mean to establish the federal court system as a grievance committee for tenants of state and local housing authorities. Frivolous challenges to a housing authority's "just cause" to evict, such as are presented in this case, will in the future be summarily dismissed.

■■■ The standards developed under the equal protection clause to avoid the invalidation of social and economic legislation under the rubric of "substantive due process" are applicable to judicial review of a housing authority's "just cause" to evict. "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only when the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality . A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). See also Dandridge v. Williams, 397 U.S. 471, 484–485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 488–489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■■■ In the instant case, defendant has argued in support of its prohibition of the possession of dogs by its tenants that even well-attended dogs create a health and safety threat by barking, biting, fouling public areas, and attracting other, ownerless dogs. The defendant has supported its permission for tenants to have cats on the grounds that cats serve a "mousing" function, and that they do not create health and safety problems of the same magnitude as do dogs. I conclude that defendant has a legitimate interest in protecting the health and safety of its tenants, and that its prohibition of dog ownership and contrasting permission of cat ownership are reasonable means of achieving this legitimate interest. *Cf.* Blakely v. Housing Auth. of County of King, 8 Wash.App. 204, 505 P.2d 151, 154, 156 (1973).

As the Supreme Court recently declared: "[T]his Court has observed that 'the problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70 [33 S.Ct. 441, 57 L. Ed. 730] (1913). We do not wish to inhibit state experimental classifications

in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose." McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282, 289 (1973). I regard public housing to be an area of governmental concern every bit as practical and troublesome as the incarceration procedures involved in *McGinnis;* attempts to establish and maintain decent living conditions within public housing projects despite inadequate available resources, inflationary costs, and the social turmoil endemic in our pluralistic nation, are necessarily experimental in that they must vary from time to time and locality to locality to meet the needs of individual housing projects and their tenants.

 The countervailing arguments of plaintiffs as to the reasonability of their desire to possess dogs [5] are

---

5. Plaintiffs' Memorandum in Support of Preliminary Injunction states at pp. 5–6:

"It is plaintiffs' position that the defendants must have reasonable cause to evict them. They do not feel that it is reasonable to exclude all dogs while cats are allowed. It is also not just where the tenants have reasonable cause for fear from rape and breaking and entering. The plaintiffs proposed reasonable regulations which were refused on broad generalizations. The only cases in point support this position. Didyk v. Golar, 167 N.Y.L.J. No. 12, p. 17 (N.Y.Sup.Ct.1972) ; In re Goldfeder, 162 N.Y.L.J. No. 31, p. 11 (N.Y.Sup.Ct.1969)."

I trust plaintiffs' reliance on the above quoted cases stemmed from an excess of zeal rather than a lack of candor. The *Didyk* case upheld a determination of the New York City Housing Authority that the petitioner therein was ineligible to continued residency in a housing project because of her violation of the authority's rule against the harboring of pets. The court noted that "the many appellate court decisions upholding the reasonableness of provisions prohibiting the harboring of dogs in private apartment dwellings constitute sufficient evidence that this authority's no-dog rule is not unreasonable. In Brigham Park Coop. Apartments No. 2 v. Krauss (28 A.D.2d 846 [282 N.Y.S.2d 938], aff'd 21 N.Y.2d 941 [289 N. Y.S.2d 769, 237 N.E.2d 86] [1968]) and East River Housing Corp. v. Matonis (34 A.D.2d 937 [312 N.Y.S.2d 461], aff'd without opinion 27 N.Y.2d 931 [318 N.Y.S.2d 733, 261 N.E.2d 647]) prohibitions against the harboring of animals were upheld despite the tenants' arguments that the dogs were being kept for protection and crime was rampant in the premises." The *Didyk* court went on to sympathize with the petitioner's need for more protection from crime, but concluded that although it was "regrettable and unfortunate . . . the law precludes the granting of the relief sought herein." The only relief granted was an order that petitioner be given at least six months either to give up her dog or to find another place to live.

The *Goldfeder* case is similarly unsupportive of plaintiffs' position. The petitioner therein also sought to have overruled a determination of ineligibility for continued tenancy made by the New York City Housing Authority because of the petitioner's keeping a dog in her apartment. The petitioner claimed that the dog was medically necessary for the mental and physical welfare of her retarded son. The court held that "The authority's rules and regulations appear fair and reasonable and conform adequately to due process standards." Nevertheless, the court found that "[i]n fairness and justice . . . petitioner should be given a final opportunity to submit all necessary proofs to the project manager" and to have that manager's decision reviewed *de novo* by a disinterested superior. The court thus remanded the case to make sure that the "pertinent facts" were reviewed by the authority prior to "ultimate imposition of the drastic remedy of terminating the tenancy." The *Goldfeder* court did not hold that the authority was under any *duty* to allow petitioner to remain with her dog; the authority was required only to hear the exceptional facts alleged before exercising its discretion in this regard.

In the instant case, defendant indicated at oral argument that it was prepared to exercise an equitable discretion in allowing a tenant to keep a dog in extraordinary circumstances, such as a blind person living with a seeing-eye dog. Defendant further indicated that it was aware of the Bogans' claim that their dog was necessary for their protection from crime, especially in view of an illness in the family, and that defendant nevertheless was not prepared to grant the Bogans discretionary relief on that basis. I hold that defendant has given sufficient consideration to the Bogans' claim of special circumstances, and that based upon that consideration and on the substance of the Bogans' alleged special circumstances, defendant's refusal to exercise its discretion in the

not relevant to my assessment whether a "state of facts reasonably may be conceived to justify" defendant's pet clause. McGowan v. Maryland, *supra*, 366 U.S. at 426, 81 S.Ct. 1101.[6] Plaintiffs have no federal right to have dogs in their homes; they do have a right not to be arbitrarily evicted from their homes by their public landlord. Where, as here, the public landlord seeks to evict for breach of a covenant of its lease which is reasonably related to the achievement of a legitimate interest of the public landlord, the eviction is *ipso facto* not arbitrary. The fact that plaintiffs deem their arguments as to the merits of dog ownership to be more reasonable than defendant's arguments to the contrary, does not render defendant's action arbitrary. Plaintiffs disagree with the wisdom of a governmental policy; in such a situation a federal court does not pass on the relative weight of the arguments of the parties, but reviews the challenged state action merely to insure that it is untainted by "invidious discrimination." Williamson v. Lee Optical of Oklahoma, Inc., *supra*, 348 U.S. at 489, 75 S.Ct. 461. See also Richardson v. Belcher, 407 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, *supra*, 397 U.S. at 487, 90 S.Ct. at 1162, 25 L.Ed.2d at 503 (1970). Absent such a taint, plaintiffs must look to available political rather than judicial forums for redress of what they regard as unreasonable official action.

I need not reach the question whether plaintiffs could properly bring a class action. Defendant's motion to dismiss the complaint is granted. Enter judgment dismissing the action in its entirety.

So ordered.

---

Bogans' behalf is neither arbitrary nor irrational.

6. It appears that some members of the Court of Appeals for the Second Circuit would employ a stricter level of scrutiny of legislative classifications affecting living arrangements than is mandated by McGowan v. Maryland, *supra*, and similar cases setting forth a minimal "rational relationship" test for upholding legislative classifications against equal protection attacks. In Boraas v. Village of Belle Terre, 476 F.2d 806 (2d Cir. 1973), reh'g en banc denied, 476 F.2d 824, cert. granted, 414 U.S. 907, 94 S.Ct. 234, 38 L.Ed.2d 145, 1973, Judge Mansfield spoke for a divided court in rejecting application of the rational relationship test's presumption in favor of the validity of a municipal zoning ordinance, and instead adopted "a more flexible and equitable approach, which permits consideration to be given to evidence of the nature of the unequal classification under attack, the nature of the rights adversely affected, and the governmental interest urged in support of it. Under this approach the test for application of the Equal Protection Clause is whether the legislative classification is substantially related to the object of the statute. [Citations omitted.]" 476 F.2d at 814. The thrust of the majority opinion in *Boraas* seems to be that the requisite rational nexus between a leg-

islative classification and the legitimate legislative purpose it purportedly serves, must be established by competent evidence rather than left to the reasonable conjecture of the reviewing court.

I need not determine the extent to which *Boraas* is binding on this Court, see opinion of Timbers, J., dissenting from denial of reconsideration *en banc*, 476 F.2d at 825, nor whether *Boraas* and similar Second Circuit cases have been eclipsed by the Supreme Court's decisions in McGinnis v. Royster, *supra*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282, and San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). *Cf.* Doe and Roe v. Norton, D.C., 365 F.Supp. 65, at 78, n. 22 (D.Conn.1973). Even the majority in *Boraas* allowed that the rationality of a legislative classification as a means for achieving a permissible state interest could be assessed without "rank speculation" by reliance either on "evidence or . . . facts that could be judicially noticed." Boraas v. Village of Belle Terre, *supra*, 476 F.2d at 816. *Cf.* Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 79, 31 S.Ct. 337, 55 L.Ed. 369 (1911). I deem the general nature of the behavior of pet dogs to be well within the realm of judicial notice, and draw therefrom the state of facts which I hold justifies defendant's pet clause.