### 0178

GREENVILLE HOUSING AUTHORITY OF the CITY OF GREENVILLE, by Darcus CARLTON, Agent, Appellant, v. Jessie SALTERS, Respondent.

(316 S. E. (2d) 718)

Court of Appeals

*Joseph M. Jenkins, Jr.,* of *Horton, Drawdy, Hagins, Ward & Johnson,* Greenville, *for appellant.*

*Robert N. Jenkins of Legal Services Agency of Western Carolina, Inc.,* Greenville, *for respondent.*

May 21, 1984.

Per Curiam:

This is an action by the appellant, Greenville Housing Authority, to eject the respondent, Jessie Salters, from a low-income housing apartment for failing to pay her rent. The magistrate directed a verdict in favor of the Housing Authority. On appeal to the circuit court, the magistrate's judgment was reversed. The Housing Authority appeals from the reversal, asserting the circuit court erred in finding the Authority's lease provisions as applied in this case to be inconsistent with the policies of the United States Housing Act of 1937, 42 U.S.C. Section 1437 *et seq.* We agree and reverse.

The facts are not disputed. The Housing Authority operates low-income housing under a contract with the federal government pursuant to the Housing Act of 1937. In 1976, Mrs. Salters leased an apartment from the Housing Authority. The lease agreement required that she pay rent on the first day of each month.

The present controversy centers on a series of occurrences between June and October, 1980. The Housing Authority, in accordance with the terms of the lease, re-examined Mrs. Salters's family income in June and adjusted her rent upward to $125 monthly, effective July 1, 1980. Although Mrs. Salters paid the July and August rent, she failed to pay the rent due on September 1, 1980. After notification and subsequent failure to pay, the Housing Authority initiated this action on September 15, 1980, to evict Mrs. Salters from the apartment.

Mrs. Salters's defense, asserted before both the magistrate and the circuit court, rested on her contention that the September rental charge of $125 violated the Housing Act of 1937 and the regulations promulgated thereunder. She maintained without dispute that the Housing Authority based the $125 monthly rental on her family income which included the incomes of two daughters residing with her. The Housing Authority determined as early as July, 1980, to relocate the

two daughters and their families to correct an overcrowding problem. The Authority in fact relocated the daughters on September 10, 1980. Once the daughters moved out, the $125 rental exceeded twenty-five percent of Mrs. Salters's total family income in violation of the Housing Act of 1937. Mrs. Salters therefore asserted that the $125 monthly rental was excessive and invalid and that she was entitled to a reduction.

Mrs. Salters further argued that to require that she pay the entire rent for September imposed a hardship upon her which was created by and within the control of the Housing Authority and from which the Authority would realize a windfall since it could twice consider the daughters' incomes in collecting rent for September. Mrs. Salters contended, therefore, that the reduction in rent to which she was entitled based on the transfer of her daughters should relate back to September 1, 1980, the date the rent was due. She asserted that the Housing Authority lease, which provides for a reduction effective the first of the month following the change in circumstances violated the letter and the spirit of the Housing Act of 1937 and the Department of Housing and Urban Development (HUD) regulations, handbooks and circulars which require prompt rent reductions.

The magistrate found that Mrs. Salters was not entitled to a reduction in rent until October 1, 1980, based on the provisions of the lease and federal laws and regulations. Therefore, the magistrate directed a verdict for the Housing Authority. Mrs. Salters appealed to the circuit court.

The circuit court reversed the magistrate, finding the lease provision setting the effective date of the rent reduction on October 1, 1980, to be violative of the letter and spirit of the Housing Act of 1937, and HUD regulations and handbooks. It also agreed with Mrs. Salters that the Housing Authority would realize a windfall since it would twice consider the daughters' incomes in assessing September rent.

On appeal to this Court, it is the position of the Housing Authority that the circuit court erred both in finding that the lease violated federal law and that the Housing Authority realized a windfall. The Authority argues that pursuant to the federal Housing Act of 1937, it had discretion to establish reasonable lease provisions and that the provision at issue in this case is reasonable. We find merit in the Authority's contentions.

The Housing Act of 1937 was enacted for the purpose of assisting county and municipal governments in providing decent housing for low-income people. 42 U.S.C. Section 1437. To effect this purpose, Congress specifically recognized the need to give the local housing authorities the greatest amount of autonomy possible to manage their housing programs efficiently. *Vandermark v. Housing Authority of the City of York,* 663 F. (2d) 436 (3d Cir. 1981).

The policy of delegating responsibility to the local housing authorities was expressly set forth at 42 U.S.C. Section 1437, under the section captioned "Declaration of Policy," which states in relevant part:

> It is the policy of the United States ... to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.

The Housing Authority concedes that its discretion is not unrestricted. The federal Housing Act itself and judicial and administrative construction of it establish several limitations. Two of these limitations are of significance to this case. First, since the housing authorities operate under an annual contract with HUD, the authorities, like HUD, must operate within the requirements of the Housing Act. *Fletcher v. Housing Authority of Louisville,* 525 F. (2d) 532 (6th Cir. 1975). Second, HUD's publication, the Public Occupancy Handbook, 7465.1 (Rev. 1978), was designed to assist local housing authorities comply with HUD regulations and authorities are required to follow the policies therein. *Hess v. Ward,* 497 F. Supp. 786 (E. D. Pa. 1980).

It is axiomatic that judicial interference with the discretion accorded the Housing Authority is only warranted when a review of its actions reveals by clear and convincing evidence some arbitrary action outside the boundaries of the federal laws and regulations. *Bogan v. New London Housing Authority,* 366 F. Supp. 861 (D. Conn. 1973). The inquiry in this case is whether the Authority's lease provision instituting rent reductions on the first of the month following a change in circumstances is violative of the Housing Act, HUD regulations or HUD's Public Occupancy Handbook.

We find nothing in the language of the federal Housing Act, the applicable regulations or the Handbook which requires that rent reductions be given retroactive application. The Brooke Amendment to the Housing Act, 42 U.S.C. Section 1437a(1) addresses the assessing of rent:

> Except as otherwise provided in this section, income limits for occupancy and rents shall be fixed by the public housing agency and approved by the Secretary [of HUD]. The rental for any dwelling unit shall not exceed one-fourth of the family's income as defined by the Secretary.

"Total family income" is defined at 24 C.F.R. Section 860.403(o) as "income from all sources . . . anticipated to be received during the twelve months following admission or reexamination of family income."

Although Mrs. Salters argues that after the relocation of her daughters, the $125 rent charge assessed for September exceeded one-fourth of her total family income, it is clear that the rent was properly assessed under the statute. When the Authority adjusted Mrs. Salters's rent to $125 in June, it was anticipated that her daughters' incomes would be sources of income during the next twelve months. It wasn't until July that it became clear that relocation of the daughters would be necessary.

In addition, our review of HUD regulations promulgated under the authority of the federal Housing Act reveals that HUD requires that certain provisions be included in leases. 24 C.F.R. Section 866.1, *et. seq.* These regulations also permit housing authorities to exercise discretion in formulating other lease provisions. Nothing therein, however, proscribes prospective rent reductions.

The circuit court, in reversing the magistrate and finding the lease violative of federal law, chiefly relied on a provision of HUD's Public Occupancy Handbook, 7465.1 (Rev. 1978) which expresses HUD's policies on interim rent adjustments. Chapter 4, sections 4-5 provide in relevant part:

> b. The PHA [public housing agency], in development of an interim rent determination policy, should bear in mind that the rent that the family is paying at any one time should be realistic in terms of the family's immedi-

ate circumstances. The PHA must not . . . cause hardship to the family.

. . . .

e. The PHA should attempt to devise policies that are fully responsive to the inevitable changes of income and family composition that affect the economic status of low-income families. Particularly, the PHA's procedures should provide for prompt reduction in rent when an unanticipated decrease in income is reported by the tenant family.

Giving the language of these sections its ordinary ■■ meaning, we find nothing in it requiring the Housing Authority to reduce Mrs. Salters's rent retroactively. At most, had Mrs. Salters paid her rent when it was due, she would have had a claim for reimbursement of that part of her rent which, after September 10, 1980, exceeded one-fourth of her total family income. Clearly the Handbook provides her no defense to this action to evict her for failing to pay her rent.

Likewise, we find nothing in the record which reveals that the Housing Authority would realize a windfall from collecting rent from both Mrs. Salters and her daughters based on a double consideration of the daughters' incomes. The record is silent as to whether the Authority even assessed rent for the daughters' residences for September.

We note in concluding that housing authorities are required by the federal Housing Act to adopt appropriate management practices. Section 1437d(c)(4)(B) provides:

Every contract for annual contributions shall provide that . . . the public housing agency shall comply with such procedures and requirements as the Secretary may prescribe to assure that sound management practices will be followed in the operation of the project, *including requirements pertaining to . . . the establishment of satisfactory procedures designed to assure the prompt payment and collection of rents and the prompt processing of evictions in the case of nonpayment of rent. . . .* (Emphasis added.)

Since neither the plain meaning nor any ascertainable purpose of the Housing Act is violated by the lease provision as applied to Mrs. Salters, the judgment of the circuit court is

Reversed.